IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONAS ROBERTS, | ) |
| Plaintiff, | ) Civil Action No. 10 - 735 |
| | ) |
| v. | ) District Judge Nora Barry Fisher |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| C/O HASSACK, | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendant's Amended Motion to Dismiss (ECF No. 14) be granted.

**II.     REPORT**

Plaintiff, Jonas Roberts, a state inmate currently confined at the State Correctional Institution at Fayette, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against Correctional Officer Hassock, an employee of the Pennsylvania Department of Corrections (DOC).  Plaintiff alleges a violation of his right under the First Amendment of the United States Constitution regarding his inability to have his Kufee and prayer rug while he was confined in the Restricted Housing Unit.  Defendant Hassock has moved for dismissal alleging that Plaintiff failed to comply with the mandatory DOC three-step grievance process available to Pennsylvania state prisoners.  For the reasons that follow, the Motion should be granted.

**A. Standard of Review**

Defendant has filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6).  In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).  The court is bound to give the plaintiff the benefit of every

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1] It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

---

1. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

In addition, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Due to the discussion below, the Court will not give Plaintiff the opportunity to amend his complaint as it would be futile to do so.

## B. Failure to Exhaust Administrative Remedies

Defendant has moved to dismiss the Complaint on the basis that Plaintiff failed to comply with the mandatory administrative exhaustion requirement set forth in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those

administrative procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System). The purpose of the grievance system is to ensure that every individual committed to DOC custody has access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal.

Inmate grievances must be in writing and in the format provided on the forms supplied by the institution. An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, the Facility Grievance Coordinator designates a staff member to serve as the Grievance Officer for that issue. If the Facility Grievance Coordinator determines that the issue being grieved is not in accordance with DC-ADM 804, it is returned to the inmate unprocessed with a DC-804, Part 3, Grievance Rejection Form (Attachment C) enumerating the reason(s) the grievance was not accepted. The grievance, if resubmitted, must be resubmitted under the same grievance number within 5 working days. The Grievance Officer is required to provide a written response to the inmate within 10 working days of receipt of the grievance. An inmate may appeal an Initial Review decision to the Facility Manager in writing within 10 working days

from the date of the Initial Review decision. The Facility Manager must notify the inmate of his/her decision within 10 working days of receiving the appeal. Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within 15 working days from the date of the Facility Manager's decision. An inmate appealing a grievance to final review is responsible for providing the Secretary's Office of Inmate Grievances and Appeals with all required documentation relevant to the appeal. A proper appeal to final review shall include photocopies of the initial grievance, initial review response, the inmate appeal to the Facility Manager, and the Facility Manager's decision; failure to provide the proper documentation may result in the appeal being dismissed. The Secretary's Office will issue a decision within 30 working days after receipt of an appeal.

In the instant action, official records indicate that, during the relevant time period, Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804. In this regard, Defendant asserts that Plaintiff did not complete the three-step process because he failed to appeal any of his grievances to final review to the Secretary's Office. Although ordered to do so, Plaintiff did not file any response to Defendant's Motion.[2]

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).[3] The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or

---

2. By Order dated 9/23/10, Plaintiff was ordered to file a response and brief in opposition to Defendant's Amended Motion to Dismiss no later than October 29, 2010.

3. The relevant regulations require the inmate to include a statement of the facts relevant to the claim, identify any persons who may have information that could be helpful in resolving the grievance and include information on attempts to resolve the matter informally.

otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule … courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. *Id*. at 94.

In the case at bar, Plaintiff procedurally defaulted all of his claims by failing to timely appeal to final review. As stated by the Court of Appeals for the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73

(quotation omitted). The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in Booth.

In the absence of any controlling authority to the contrary, this Court is required to follow the directives of the Court of Appeals for the Third Circuit and grant Defendant's Motion to Dismiss due to Plaintiff's failure to have properly exhausted his available administrative remedies. *Accord* Quillar v. Brinkman, 63 Fed.Appx. 361, 362 (9th Cir. 2003) ("The district court correctly dismissed Quillar's action because it was clear from the face of the amended complaint that he had failed to exhaust available prison administrative remedies."); Rozzelle v. Rossi, 307 Fed. Appx. 640, 642 (3d Cir. 2008) (finding that inmate's failure to file for final review amounted to procedural default thereby precluding his claims); Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531 (3d Cir. 2006).

### III. CONCLUSION

For the reasons stated above it is respectfully recommended that Defendant's Amended Motion to Dismiss (ECF No. 14) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Date: November 29, 2010

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Jonas Roberts    JA - 4708
S.C.I. Fayette
Box 9999
50 Overlook Drive
LaBelle, PA 15450 - 0999